CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

SEP 03 2013

JULIA C. DUDLEY CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ROBERT AUGUSTINE and CATHERINE AUGUSTINE, *Independently and on behalf of M.A. (Minor) and T.A. (Minor)*, | ) ) ) ) ) | CASE NO. 5:13CV00025 |
| Plaintiffs, | ) ) | REPORT AND RECOMMENDATION |
| v. | ) ) | |
| WINCHESTER PUBLIC SCHOOL DISTRICT, | ) ) ) | By: B. Waugh Crigler U.S. Magistrate Judge |
| Defendant. | ) ) | |

The defendant's June 17, 2013 renewed motion to dismiss is before the undersigned

pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct proceedings and render to the presiding District

Judge a report setting forth appropriate findings, conclusions, and recommendations for its

disposition. The motion seeks dismissal for lack of subject-matter jurisdiction and for failure of

the plaintiffs to state a claim upon which relief can be granted. For the reasons that follow, the

undersigned RECOMMENDS that an Order enter GRANTING the defendant's motion to

dismiss and DISMISSING this case from the docket of the court.

**CASE SUMMARY**

On March 13, 2013, plaintiffs[1] filed a *pro se* complaint against "Winchester Public

School District"[2] alleging, independently and on behalf of their grandchildren M.A. and T.A.,

violations of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, the

---

[1] Robert and Catherine Augustine are grandparents and legal guardians of minors M.A. and T.A., and they are residents of Winchester, Virginia. (Dkt. Nos. 3, 3-1.)

[2] The defendant points out that Winchester Public School District is not a legal entity and so cannot be a defendant in this case. (Dkt. No. 8, at 13-14.) Plaintiffs were given leave to amend their complaint, but their amended complaint continues to name Winchester Public School District as the lone defendant. (Dkt. Nos. 23, 24, 30.)

Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983. (Dkt. No. 3.) In their initial complaint, plaintiffs alleged that M.A. and T.A. are disabled under the law and suffer from emotional and psychological damage as a result of bullying, intimidation, and harassment by fellow students, against whom the administrators, teachers, staff, and servants of the defendant failed to protect M.A. and T.A. *Id.* Plaintiffs sought an award of $150,000. (Dkt. No. 3, at 2.)

On April 22, 2013, the defendant moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted. (Dkt. Nos. 7-8.) Plaintiffs responded to the motion on April 25, 2013, and they later clarified their response on April 29. (Dkt. Nos. 14, 15.) Plaintiffs addressed several of the defendant's arguments and provided more detailed factual allegations concerning specific incidences of harassment by fellow students and responses by school faculty and administrators to those instances. (Dkt. No. 14.) On April 29, 2013, plaintiffs also moved to withdraw T.A.'s claims and to add the statement of Vice Principal Anne Canada of Handley High School, Winchester, Virginia. (Dkt. Nos. 16, 17.) Plaintiffs filed a redacted version ("Redaction") of that statement on May 1, 2013. (Dkt. No. 18.) On May 9, 2013, this court issued an order setting a hearing for June 4, 2013 on the defendant's motion to dismiss and each of the plaintiffs' additional motions, which took place as scheduled. (Dkt. No. 20.)

Following the hearing, this court entered an order taking the motions under advisement and granting the plaintiffs leave until June 25, 2013 to secure counsel, if they elected to do so, and to file an amended complaint. (Dkt. No. 23.) On June 12, 2013, plaintiffs filed a "Motion to Amend Claim."[3] (Dkt. Nos. 24.) The complaint, as amended, alleged that plaintiffs were suing

---

[3] An Order was entered on June 16, 2013 deeming the Motion to Amend as an amended complaint. (Dkt. No. 28.) It is clear to the undersigned that the plaintiffs intended to incorporate the factual allegations previously alleged in the original complaint and simply to supplement the original complaint with the allegations set forth in the Motion to Amend. Therefore, the

both in their individual capacities and on behalf of just M.A., and that they were seeking

"unspecified damages" for violations of their constitutional rights secured by 42 U.S.C. §1983.

(Dkt. No. 24, at 1-2.) On June 17, the defendant renewed its previous motion to dismiss. (Dkt.

No. 25.) On June 19, plaintiffs filed their response to the renewed motion. (Dkt. No. 30.)

On April 25, 2013, the presiding District Judge referred all dispositive motions to the

undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), to conduct proceedings and to issue a Report

and Recommendation as to the disposition of the motions. (Dkt. No. 13.)

**MOTION TO DISMISS**

The "lack of subject-matter jurisdiction" may be asserted by a defendant under Fed. R.

Civ. P. 12(b)(1). A plaintiff then bears the burden of demonstrating that the court possesses

subject-matter jurisdiction over the claims asserted. *See Goldsmith v. Mayor of Baltimore*, 845

F.2d 61, 63-64 (4th Cir. 1988). In that connection, a plaintiff must establish standing to bring the

claims asserted before the power of a federal court to decide the merits of those claims can be

invoked. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). To have standing, a plaintiff must

demonstrate: (1) that he/she has suffered an "injury in fact," meaning an invasion of a legally

protected interest that is concrete and particularized and actual or imminent, not conjectural or

hypothetical; (2) that there is a causal connection between the injury and the conduct complained

of, meaning the injury has to be fairly traceable to the challenged action of the defendant and not

the result of an independent action of some third party not before the court; and (3) that is likely,

as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See*

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Gaston*

*Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (en banc); *Friends for Ferrell*

---

undersigned will, and the court should, consider the Motion to Amend as supplementing the
original complaint rather than as one superseding it. *See Franks v. Ross*, 313 F.3d 184, 198 (4th
Cir. 2002).

*Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002). While a plaintiff must exhaust

available administrative remedies before bringing their claims to federal court, failure to exhaust

is an affirmative defense that must be plead and proven by the defendant. *See Anderson v. XYZ*

*Correctional Health Services, Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

Under Fed. R. Civ. P. 12(b)(6), all or part of any action may be dismissed for "failure to

state a claim upon which relief may be granted." The court must accept as true factual

allegations contained in the complaint, though it need not accept legal conclusions; and, to

survive a motion to dismiss, the complaint must provide sufficient facts which, if accepted as

true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). Facial

"plausibility" lies on a spectrum between possibility and probability, and it is established when

the court is able to draw a reasonable inference that the defendant may be liable for the conduct

alleged. *Id.* The complaint need not include detailed factual allegations, but the factual

allegations must be more than a formulaic recitation of the elements of a cause of action and

must raise a plausible right to relief above the speculative level. *Id.* The court may consider

evidence attached to the complaint and the motion to dismiss, so long as it is integral to the

complaint and authentic.[4] *Secretary of State For Defense v. Trimble Navigation Ltd.*, 484 F.3d

700, 705 (4th Cir. 2007). It is within the court's discretion to consider any evidence outside of

the pleadings, and, if the court chooses to do so, it should convert the motion to dismiss to a

motion for summary judgment. *See McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010).

---

[4] "As an important note that in a 12(b)(6) context, this Court should consider only that which is contained in the complaint, attached as an exhibit pursuant to Rule 10(c), a matter of public record, or a fact that has been judicially noted." *Space Technology Development Corporation v. Boeing Company*, No. 05-1671, 2006 WL 3612816, at *2 (4th Cir. December 12, 2006) (unpublished).

*Pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers" and can be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106-107 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)). By the same token, the federal courts may not be an advocate for a *pro se* plaintiff and must hold the complaint to certain minimal pleading standards. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985); *Holsey v. Collins*, 90 F.R.D. 122, 128 (D.C.Md. 1981); *Switzer v. Town of Stanley*, No. 5:10cv00128, 2010 WL 4961912, at *2–3 (W.D.Va. December 1, 2010).

## DISCUSSION

As an initial matter, it is critical to understand that plaintiffs have brought this action under 42 U.S.C. § 1983. Plaintiffs stated in open court that their prior administrative proceedings under the Individuals with Disabilities in Education Act. 20 U.S.C. 1400 et seq., ("IDEA"), which they withdrew from, have no bearing on the present action and that their only claims were being brought under Section 1983. Furthermore, plaintiff's "Motion to Amend" only asserts claims under Section 1983 for alleged violations of M.A.'s constitutional rights. (Dkt. No. 28.) However, Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, fn3 (1979). As said, the undersigned has some difficulty determining what claims the plaintiffs are seeking to maintain in this action. Their motion to amend, which the undersigned originally treated as an amended complaint, sets forth a Section 1983 claim independently and on behalf of M.A, asserting that the claim is "not limited to the Fourteenth Amendment and Equal Protection Clause of the United States Constitution." (Dkt. No. 28.) Plaintiff's original complaint, which

5

the undersigned treats as supplemented, and their response to the defendant's motion to dismiss, seem to suggest that plaintiffs have relied on Section 1983 as a vehicle through which to seek monetary damages for alleged violations of statutory rights under the Civil Rights Act of 1964, the ADA, and Section 504 of the Rehabilitation Act. (Dkt. No. 3, 14.) Examining the record in the light most favorable to the plaintiff, the undersigned will consider all of these statutory and constitutional claims to have been brought under Section 1983 when evaluating the defendant's motion to dismiss according to principles applicable to Section 1983.

In that context, the defendant contended in their original motion to dismiss and have reasserted in the renewed motion that plaintiffs have elected to name, "Winchester Public School District," as the defendant, an entity which "does not legally exist, cannot sue or be sued, and against which no relief can be granted." (Dkt. Nos. 8, at 14; 25.) The defendant has maintained all along that, if there is a proper party which exists under Virginia law, it would be the Winchester School Board. *See* Va.Code § 22.1–28 (the school board is charged with the supervision of the schools in each division); Va.Code § 22.1–71 (the school board is a corporate entity vested with the power to sue and be sued); *M.S. v. Fairfax Co. Sch. Bd.,* No. 1:05cv1476, 2006 WL 721372, at *3 (E.D.Va. Mar. 20, 2006) ("Fairfax County School Board is the only local entity empowered to govern the Fairfax County public school system and is the only entity that has the authority to sue and be sued in connection with such governance."); *Thayer v. Wash. Co. Sch. Bd.,* 949 F.Supp. 445, 446 n. 1 (W.D.Va. 1996) (holding that Washington County Public Schools could not be a proper defendant, as it is not a recognizable legal entity); *See also Smith v. James C. Hormel School of Virginia Institute for Autism,* No. 3:08cv00030, 2009 WL 1081079, at *4 (W.D.Va. April 22, 2009).

The undersigned gave the plaintiffs an opportunity to amend their complaint, and they appear to have been steadfast in electing to reassert their claims against an entity which does not exist under Section 1983 jurisprudence for the purposes for which it is sued. (Dkt. No. 23.) On this ground, alone, the defendant's motion to dismiss is well founded.

Accordingly, the undersigned RECOMMENDS that the motion be GRANTED, and plaintiff action be DISMISSED for failure to state a claim upon which relief can be granted against the only defendant named in the case.

**Standing**

The defendant also contends that plaintiffs have failed to demonstrate that this court has subject-matter jurisdiction over their claims because of lack of standing. (Dkt. Nos. 8, at 4-8; 25, at 1.) First, the defendant offers that plaintiffs lack standing to pursue the claims they have brought individually. It argues that Robert and Catherine Augustine ("Augustines") have not alleged that the defendant violated any of rights personal to them which are protected under Section 1983, as opposed to rights of third persons. (Dkt. No. 8, at 4-7.) Moreover, it argues that the Augustines lack standing to pursue claims on behalf of their grandchildren. (Dkt. No. 8, 7-8.) It offers that "non-attorney parents or guardians generally may not litigate the claims of minor children in federal court," and defendant argues that the grandchildren, as minors, lack capacity to sue *sui generis*, under Virginia law. *Id.*

On the first point, the Augustines allege in their amendment to their complaint that they are entitled to "unspecified damages brought forth under [42 U.S.C § 1983] for emotional, psychological, and physical changes and violations of the Fourteenth Amendment due to the [defendant's] failure to provide Duty of Care and Breaching that Duty re: M.A." (Dkt. No. 24, at 1-2.) However, the Augustines have not alleged that the defendant breached any duty personal

7

to them, nor have they alleged cognizable personal damages. *See Allen v. Wright*, 468 U.S. 737,

751 (1984) (to demonstrate standing, a plaintiff must show ""personal injury fairly traceable to

the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief").

Accordingly, they would not normally have proven standing to bring an independent claim.

However, the issue of parental standing in cases involving the education of disabled

children has been left rather murky as a result of the decision by the United States Supreme

Court in *Winkelman ex rel. Winkelman v. Parma City School Dist.*, 550 U.S. 516 (2007). There,

the Court relied on the plain text and statutory scheme of the Individuals with Disabilities

Education Act ("IDEA"), along with "social and legal traditions" giving parents a "recognized

legal interest" in the education and upbringing of their children, to find that parents have

independent enforceable rights under the Act. *Winkelman*, 550 U.S. at 526-529, 533, 535.

Though plaintiffs have not asserted any claims under the IDEA, and actually have gone on

record denying doing so, several courts have found that *Winkelman* should apply broadly to all

claims concerning discrimination against disabled children in the educational setting, including

those brought under the Rehabilitation Act and the ADA.[5] Other courts disagree, limiting

*Winkelman's* effect only to IDEA cases.[6]

---

[5] *See A.M. ex rel. J.M. v. NYC Dept. of Educ.*, 840 F.Supp.2d 660 (E.D.N.Y. 2012); *C.J.G. v. Scranton School Dist.*, No. 3:07-CV-1314, 2007 WL 4269816 (M.D.Pa. December 3, 2007); *Tereance D. ex rel. Wanda D. v. School Dist. Of Philadelphia*, 548 F.Supp.2d 162 (E.D.Pa. 2008); *Annika T. v. Unionville Chadds-Ford School Dist.*, No. 08-4944, 2009 WL 778350 (E.D.Pa. March 24, 2009); *K.F. v. Francis Howell R-III School Dist.*, No. 4:07CV01691, 2008 WL 723751 (E.D.Mo. March 17, 2008); *Blanchard v. Morton School Dist.*, 509 F.3d 934 (9th Cir. 2007); *Stassart v. Lakeside Joint School Dist.*, No. C 09-1131 JF (HRL), 2009 WL 3188244 (N.D.Cal. September 29, 2009).

[6] *See D.A. ex rel. K.A. v. Pleasantville School Dist.*, No. 07-4341, 2008 WL 2684249 (D.N.J. June 30, 2008) (final decision in *D.A. v. Pleasantville School Dist.*, No. 07-4341, 2009 WL 972605 (D.N.J. April 6, 2009); *Sher v. Upper Moreland Tp. School Dist.*, No. 11-1525, 2012 WL 6731260 (E.D.Pa. December 28, 2012); *Woodruff v. Hamilton Tp. Public Schools*, 305 Fed. Appx. 833 (3d Cir. 2009)(unpublished); *L.F. Houston Independent School Dist.*, No. H-08-2415, 2009 WL 3073926 (S.D.Tex. October 21, 2009); *Hooker v. Dallas Independent School Dist.*,

Neither the Fourth Circuit Court of Appeals nor any other lower court in this circuit has examined this issue, but the undersigned is persuaded by the reasoning of the courts that have limited *Winkelman's* scope to the IDEA context. First, the Supreme Court made no reference in its decision to any civil rights statute other than the IDEA. While broadly referring to the legal rights of parents concerning their children with disabilities, the Court's decision is grounded in the specific statutory language and structure of the IDEA.[7] While the IDEA and the Rehabilitation Act certainly contain the same language allowing "any party aggrieved" to seek relief in federal court,[8] the Supreme Court relied on its examination of the unique structure and content of the IDEA, especially concerning the coterminous rights of parents and their children and their remedies.[9] *See Sher v. Upper Moreland Tp. School Dist.*, No. 11-1525, 2012 WL 6731260, at *5 (E.D.Pa. December 28, 2012); *See also M.W. ex rel. Williams v. Avilla R-XIII School Dist.*, No. 09-05098-CV-SW-JTM, 2011 WL 3354933, at *2 (W.D.Mo. August 3, 2011); *L.F. Houston Independent School Dist.*, No. H-08-2415, 2009 WL 3073926, at *22 (S.D.Tex. October 21, 2009).

---

No. 3:09-CV-0676-G-BH, 2010 WL 4025776 (N.D.Tex. September 13, 2010); *Link ex rel. Link v. Metropolitan Government of Nashville and Davidson County*, No. 3:12-cv-0472, 2012 WL 4506028 (M.D.Tenn. September 28, 2012); *M.W. ex rel. Williams v. Avilla R-XIII School Dist.*, No. 09-05098-CV-SW-JTM, 2011 WL 3354933 (W.D.Mo. August 3, 2011); *J.R. ex rel. W.R. v. Sylvan Union School Dist.*, No. S-06-2136 LKK GGH PS, 2008 WL 682595 (E.D.Cal. March 10, 2008); *T.M. ex rel. Benson v. San Francisco Unified School Dist.*, No. C 09-01463, 2010 WL 291828 (N.D.Cal. January 19, 2010).

[7] "We agree that the text of the IDEA resolves the question presented." *Winkelman*, 550 U.S. at 523. "We instead interpret [the IDEA]'s references to parents' rights to mean what they say: that IDEA includes provisions conveying rights to parents as well as to children." *Id.* at 529.

[8] See 29 U.S.C. § 794a(2) (Rehabilitation Act); 20 U.S.C. § 1415(g)(1), (i)(2)(A) (IDEA).

[9] "Petitioners construe these various provisions to accord parents independent, enforceable rights under IDEA. We agree. The parents enjoy enforceable rights at the administrative stage, and it would be inconsistent with the statutory scheme to bar them from continuing to assert these rights in federal court." *Winkelman*, 550 U.S. at 526.

For these reasons, it is the undersigned's view that the motion to dismiss the claims brought by the Augustines in their individual capacity is well founded and that their personal claims should be DISMISSED.

The next question is whether the Augustines in their representative capacity as guardians for their grandchildren may assert *pro se* Section 1983 claims for those grandchildren. The general rule in this circuit has been and still is that guardians may not bring their minor ward's claims in federal court without the assistance of an attorney. *See Myers v. Loudoun County Public Schools*, 418 F.3d 395, 401 (4th Cir. 2005); *B.D. ex rel. Dragomir v. Griggs*, No. 1:09cv439, 2010 WL 2775841, at *5 (W.D.N.C. July 13, 2010) (finding that *Winkelman* does not affect the prevailing rule that minor children cannot bring suit through their parents if their parents are not represented by an attorney). *See also R.W. v. Wake County Public Schools*, No. 5:07–CV–136–F3, 2010 WL 3452376, at *5 (E.D.N.C. September 1, 2010). Plaintiffs were given an opportunity to secure counsel, but they elected not to do so. (Dkt. Nos. 23, 24.) While the court in *Myers* noted that parents might be permitted to litigate their children's claims in the context of supplemental security income appeal because of the unique policy considerations involved in such cases,[10] no such unique considerations are involved in this case.

Accordingly, the undersigned FINDS that the motion to dismiss claims brought by the Augustines, *pro se*, is well taken and RECOMMENDS that plaintiffs' claims on behalf of M.A. and T.A. be DISMISSED.

**Administrative Remedies**

The defendant also argues in the alternative that, even if plaintiffs have standing to bring their *pro se* claims independently or on behalf of their grandchildren, the claims should be

---

[10] *See Myers v. Loudoun County Public Schools*, 418 F.3d 395, 401 (4th Cir. 2005).

dismissed for failure to exhaust administrative remedies. (Dkt. No. 8, at 9-13.) This issue becomes moot should the court adopt any of the recommendations set forth above.

As said, plaintiffs' claims have not been brought under the IDEA, and Robert Augustine specifically stated at the hearing before the undersigned that their current claims are separate from those previously brought under the IDEA. However, the defendant asserts that plaintiffs must first exhaust their administrative remedies under the IDEA before this court can have subject-matter jurisdiction. *Id.* at 11. The scope of the complaint provision under the IDEA is very broad and affords the "opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). In provision 20 U.S.C. § 1415(l) of the IDEA, Congress stipulates:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990...title V of the Rehabilitation Act of 1973...or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Accordingly, parties must exhaust the administrative remedies available under the IDEA, including a due process hearing, notwithstanding the fact they seek a form of relief not available under the IDEA but available under some other federal statute, like Section 1983. See *A.W. ex rel. Wilson v. Fairfax County School Bd.*, 548 F.Supp.2d 219, 221-222 (E.D.Va. 2008). The Fourth Circuit has also recognized three narrow exemptions to the exhaustion requirement: (1)

when the administrative process would have been futile; (2) when a school board failed to give parents proper notification of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child. *See M.M. v. Sch. Dist. of Greenville County*, 303 F.3d 523, 535-536 (4th Cir. 2002).

Here, the undersigned has construed plaintiffs' claims as plainly brought under Section 1983 for alleged violations of the Constitution and "federal laws protecting the rights of children with disabilities." Yet, the Augustines essentially are challenging the school's response to peer harassment of their disabled grandchild, a cause of action available under the IDEA.[11] Moreover, the court has been informed that they originally asserted their claims under the IDEA and initiated the administrative process, only later to abandon it when they determined that monetary damages were not available. (Dkt. Nos. 8-1, 8-2, 8-3, 8-4, 8-5, 8-6, 8-7.) Plaintiffs argue that because damages are not available under the IDEA, they should not be required to exhaust administrative remedies under the Act (Dkt. No. 14.), and it is true that compensatory and punitive damages are generally not available remedies under the Act. *See Emery v. Roanoke City School Bd.*, 432 F.3d 294, 298 (4th Cir. 2005); *Sellers v. Sch. Bd. of City of Manassas,* 141 F.3d 524, 525 (4th Cir. 1998).

Though the Fourth Circuit Court of Appeals has not addressed this issue, several courts in this circuit have decline to allow a plaintiff to circumvent the exhaustion requirements of the IDEA solely because compensatory or other damages are not encompassed by the Act. As stated by the Hon. Samuel G. Wilson, U.S. District Judge, in *Pullen v. Botetourt*:

---

[11] *See generally T.K. v. New York City Dept. of Educ.*, 779 F.Supp.2d 289 (E.D.N.Y. 2011); *Ronald D. ex rel. Timothy D. v. Titusville Area School Dist.*, 159 F.Supp.2d 857 (W.D.Pa. 2001). Furthermore, here, unlike in the case of *Kovington v. Knox County School System*, 205 F.3d 912, 917-918 (6th Cir. 2000), M.A. and T.A. have not graduated from school, and so there are available administrative remedies for the harm suffered which have the potential to provide relief.

[Plaintiff] may fail to receive immediate monetary relief by pursuing his administrative remedies. However, that fact, in itself, is not enough to avoid the exhaustion requirement. If it were, any party could sidestep administrative procedures by simply drafting a civil complaint that requests monetary relief. Such occurrences would render administrative proceedings obsolete and would ultimately require federal courts to regularly determine educational policies more properly resolved by the individual states.

*See Pullen v. Botetourt*, No. 94-686-R, 1995 WL 738983, at *3 (W.D.Va. February 13, 1995). *See also Glen III By and Through Glen II v. Charlotte-Mecklenburg School Bd. of Educ.*, 903 F.Supp. 918 (W.D.N.C. 1995); *Sturm v. Bd. of Educ. of Kanawha Cnty.*, No. 06–0342, 2006 WL 1582359, *2 (S.D.W.Va. June 1, 2006); *A.W. ex rel. Wilson v. Fairfax County School Bd.*, 548 F.Supp.2d 219 (E.D.Va. 2008); *T.W. v. Hanover County Public Schools*, 900 F.Supp.2d 659 (E.D.Va. 2012); *Wright v. Carroll County Bd. of Educ.*, No. 11–cv–3103, 2012 WL 1901380 (D. Md. 2012).

Therefore, the undersigned finds that plaintiffs' claims for monetary relief based upon conduct embraced by statutory provisions requiring exhaustion should be DISMISSED for failure to exhaust.

**FAILURE TO STATE A CLAIM**

Finally, even if plaintiffs are found to have standing to bring their claims and the court is found to have jurisdiction over their claims, they still have failed to state a claim upon which relief may be granted. While they have set forth general allegations that their Constitutional and statutory rights have been violated, plaintiffs have not pled the elements of any articulable claim.

It is true that a school board may be liable for its conduct under Section 1983 on the same theory as municipal liability, but only for its implementation of an indentifiable policy or custom.

*See Riddick v. School Bd. Of City of Portsmouth*, 238 F.3d 518, 522-524 (4th Cir. 2000); *Green v. Fairfax County School Bd.*, 832 F.Supp. 1032, 1042-1043 (E.D.Va. 1993). There are no such allegations. Even if they were asserting some type of derivative claims under the Rehabilitation Act and the Americans with Disabilities Act, a plaintiff would need to allege: (1) a disability; (2) circumstances of being otherwise qualified to receive the benefits of a public service, program, or activity, and (3) exclusion from participation in, or denial of, the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of disability. *See Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). Concerning children with disabilities in the education context, plaintiffs must allege bad faith or gross mismanagement to establish a violation of the Rehabilitation Act. *See Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 528-529 (4th Cir. 1998). Moreover, under the ADA, plaintiffs also must allege that disability played a motivating role in the discrimination or adverse action. *See Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

Meanwhile, to state a claim for an equal protection claim under the Fourteenth Amendment, plaintiffs would need to allege purposeful discrimination, similar to that recognized under the Rehabilitation Act. *See Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 528-529 (4th Cir. 1998). Moreover, because disabled persons are not yet a suspect class, plaintiff would be required to assert that the school board lacked any rational basis behind its discriminatory policy or decision.[12] *Id.*

---

[12] The title of the now supplemented original complaint made reference to violations of the Civil Rights Act of 1964. (Dkt. No. 3.) The Civil Rights Act is never again referenced or discussed in plaintiffs' pleadings. Moreover, the Civil Rights Act of 1964 protects against discrimination on the basis of race, ethnicity, gender, religion, and national origin, all protections unrelated to plaintiffs' claims. Plaintiffs have referred to, and have included a copy of, *Fitzgerald v. Barnstable*, 555 U.S. 246 (2009), when arguing standing. *Fitzgerald* is a case

Though plaintiffs allege that M.A. and T.A. are disabled and that school officials failed to prevent peer harassment, and despite the fact they have been given ample opportunity to amend their complaint, they do not claim either or both that this failure was targeted against disabled children or the result of a board ordinance or policy. Accordingly, the undersigned RECOMMENDS that their complaint be DISMISSED for failure to state a claim upon which relief can be granted.

## SUMMARY

Before summarizing, the undersigned wishes to observe that the Augustines clearly are well-intentioned. They have been most pleasant and courteous in the proceedings before the court. They have made it clear that they are pursuing claims based on issues they do not believe the Winchester school authorities have been willing to address. However, for the reasons stated, the undersigned RECOMMENDS that the court enter an Order GRANTING the defendant's motion to dismiss and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk

---

arising under Title IX of the Education Amendments of 1972 which was designed to prohibit gender discrimination in education. However, plaintiffs never refer to this statute or indicate that M.A. was discriminated against on the basis of her gender. Merely attaching a Supreme Court case concerning a possibly relevant statute is not sufficient to plead a claim.

is directed to transmit a certified copy of this Report and Recommendation to the plaintiff and all

counsel of record.

ENTERED:

U.S. Magistrate Judge

September 3, 2013
Date